<table>
<tr><td colspan="2"><b>ADVERSARY PROCEEDING COVER SHEET</b><br>(Instructions on Reverse)</td><td>ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)</td></tr>
</table>

| **PLAINTIFF**<br>Deupree's Gas, Inc. d/b/a<br>Deupree of Sylacauga | **DEFENDANT**<br>Suburban Gas Propane Partners, LLC<br>And Thompson Gas and Electric Service, Inc. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Frederick M. Garfield, Esquire<br>Spain & Gillon, LLC<br>2117 2nd Avenue North<br>Birmingham, Alabama 35203<br>(205) 581-6259 | **ATTORNEYS** (If Known)<br>David D. Schoel, Esq.<br>Natter & Fulmer<br>3800 Colonnade Pkwy., Ste 450<br>Birmingham, AL 35243 |

**PARTY** (Check one box only) ☐ U. S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for Turnover and for Temporary Restraining Order and Preliminary Injunction.

### NATURE OF SUIT
(Check the one most appropriate box only.)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 454 | To Recover Money or Property | ☐ 455 | To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan | ☐456 | | To obtain a declaratory judgment relating to any of foregoing causes of action |
| ☐ 435 | To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property | ☐426 | To determine the dischargeability of a debt 11 U.S.C. § 523 | | | |
| ☐ 458 | To obtain approval for the sale of both the interest of the estate and of a co-owner in property | ☐ 434 | To obtain an injunction or other equitable relief | ☐ 459 | | To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 424 | To object to or revoke a discharge 11 U.S.C. § 727 | ☐ 457 | To subordinate any allowed claim or interest except where such | ☒ 498 | | Other (specify) Turnover and for TRO and Preliminary Injunction. |

| **ORIGIN OF PROCEEDINGS** (Check one box only.) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Transferred to Another Bankruptcy Court | ☐ 5 Reinstated or Reopened | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| **DEMAND**<br>N/A | **NEAREST THOUSAND**<br>$250,000.00 | **OTHER RELIEF SOUGHT**<br>Injunctive Relief | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>Deupree's Gas, Inc. d/b/a Deupree of Sylacauga, Inc. | BANKRUPTCY CASE NO.<br>12-41400-JRR-11 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District | DIVISIONAL OFFICE<br>Eastern | NAME OF JUDGE<br>Robinson |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| **FILING FEE** (Check one box only) ☐ FEE ATTACHED | ☒ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|

| DATE<br>8/15/2012 | PRINT NAME<br>Frederick M. Garfield | SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Frederick M. Garfield |
|---|---|---|

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

IN RE:

| | |
|---|---|
| Deupree's Gas, Inc., ) | **CASE NO. 12-41400-JJR** |
| d/b/a Deupree of Sylacauga, Inc. ) | **CHAPTER 11** |
| ) | |
| **DEBTOR.** ) | |

| | |
|---|---|
| **DEUPREE'S GAS, INC. a/k/a** ) | |
| **DEUPREE OF SYLACAUGA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **AP No.:** _____ |
| ) | |
| **SUBURBAN GAS PROPANE** ) | |
| **PARTNERS, LLC and THOMPSON** ) | |
| **GAS AND ELECTRIC SERVICE, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT FOR TURNOVER AND FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.  PARTIES AND JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 11 U.S.C §542, 28 U.S.C. §157 and 28 U.S.C. §1334.  This Complaint seeks turnover pursuant to Section 542 of property of the estate that is matured, payable on demand or payable on order consisting of a debt owed by Defendants to the Plaintiff.

2. Plaintiff Deupree Gas, Inc. a/k/a Deupree of Sylacauga, Inc., debtor and debtor-in-possession herein ("Plaintiff" or "Deupree Gas"), is a corporation organized under the laws of Alabama with its principal place of business in Alabama.

3. Defendant Suburban Gas Propane Partners, LLC ("Suburban") is, upon information and belief, a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.

4. Defendant Thompson Gas and Electric Service, Inc. ("Thompson") is, upon information and belief, a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.

## II. FACTS

5. On October 24, 2007, pursuant to a Real Estate Purchase and Sale Agreement by and between Deupree Gas and Suburban, a copy of which is attached hereto as Exhibit "A" (the "Agreement"), Suburban purchased certain real property from Deupree Gas for the sum of Six Hundred Thousand Dollars ($600,000.00)(the "Purchase Price"). Deupree Gas's then and current President, James Deupree, executed the Agreement on behalf of Deupree Gas.

6. Four Hundred Thousand Dollars ($400,000.00) of the Purchase Price was paid by a Subordinated Promissory Note dated October 24, 2007 from Suburban to Deupree Gas (hereinafter said note and any payments now or hereinafter coming due thereunder shall sometimes collectively be referred to as the "Note"). Note attached hereto as Exhibit "B".

7. Pursuant to a Guaranty dated October 24, 2007 from Thompson to Deupree Gas, Thompson guaranteed to Deupree Gas the payment of the Note. Guaranty attached hereto as Exhibit "C".

8. Subsequent to the execution of the Agreement, the Note has been the sole substantial asset of the Plaintiff.

## III. PLAINTIFF'S CONTENTIONS

9. Plaintiff adopts and re-alleges herein each and every allegation of the preceding paragraphs as is set forth fully herein.

10. Plaintiff avers that Defendants are contractually obligated to pay to Plaintiff all sums evidenced by the Note.

11. Plaintiff avers that a justiciable controversy exists between the parties as to the rights, duties, obligations, responsibilities and liability of the parties as to the payments due under the Note referenced herein. Plaintiff therefore respectfully requests and prays that:

    a) This Honorable Court assume jurisdiction of this case pursuant to 11 U.S.C. Section 542 and determine all issues as may exist under the terms and provisions of the Note.

b) This Honorable Court order payment by Defendants of all sums presently due and owing under the Note to the Plaintiff.

c) This Honorable Court impose a temporary restraining order and preliminary injunction against Defendants prohibiting payment of all sums due and owing to Plaintiff into any other jurisdictional forum or to any entity or person other than Plaintiff pending entry of final order in this matter.

d) This Honorable Court grant Plaintiff such other, further, or different general to which it may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Honorable Court will accept jurisdiction of this action, order a speedy hearing and, upon hearing the issues presented, grant the relief requested herein, as well as determine such other, further and different relief to which Plaintiff may be entitled.

Respectfully submitted this 16th day of August, 2012.

/s/ Frederick M. Garfield
Frederick M. Garfield
Attorney for Deupree's Gas, Inc.
d/b/a Deupree's of Sylacauga, Inc.

Spain & Gillon, LLC
The Zinszer Building
2117 2nd Avenue North
Birmingham, AL 35203
(205) 328-4100

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing to the following, by mailing a copy properly addressed, postage prepaid, this the 16th day of August, 2012.

/s/ Frederick M. Garfield
Frederick M. Garfield

Robert J Landry
Anniston Bankruptcy Administrator
1129 Noble Street
Room 117
Anniston, AL 36201

David D. Schoel, Esq.
Natter & Fulmer
3800 Colonnade Pkwy., Ste 450
Birmingham, AL 35243

Defendants to be served by first class mail as follows:

Suburban Gas Propane Partners, LLC
c/o CT Corporation System
2800 Dartmouth Ave.
Bessemer, AL 35020

    and

Suburban Gas Propane Partners, LLC
c/o 100 East Coosa St.
Talladega, AL 35160

Thompson Gas and Electric Service, Inc.
6708 Old National Pike
Boonsboro, MD 21713-2721

    and

Thompson Gas and Electric Service, Inc.
c/o 100 East Coosa St.
Talladega, AL 35160

4

## REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Agreement ("**Agreement**") is entered into as of the 24th day of October, 2007 (the "**Effective Date**") by and between DEUPREE'S GAS, INC., a Alabama corporation ("**Deupree's**" or "**Seller**"), and SUBURBAN GAS PROPANE PARTNERS, LLC, a Maryland limited liability company ("**Purchaser**").

1.  **Purchase and Sale**.  Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, in accordance with the terms and conditions set forth in this Agreement and for the Purchase Price set forth in Section 2: (i) that certain parcel of land located at 40471 U.S. Highway 280, Sylacauga, Alabama 35150, as more particularly described in Exhibit A attached hereto and made a part hereof (the "**Land**") and any and all improvements thereon (the "**Improvements**;" together, the Land and the Improvements, the "**Real Property**"); and (ii) all appurtenances belonging to the Real Property (collectively, the "**Property**").

2.  **Payment of Purchase Price**.  The total purchase price for the Property (the "**Purchase Price**") shall be (a) Six Hundred Thousand Dollars ($600,000.00), less (b) any amounts paid by Purchaser under Section 4 of the Lease by and between Deupree's (as "**Landlord**") and Purchaser (as "Tenant") dated August 28, 2007 (the "**Lease**") as of the Closing Date (as hereinafter defined).  At the time of closing of the purchase and sale of the Property (the "**Closing**"), Purchaser shall deliver to Deupree's a $400,000 Subordinated Promissory Note in substantially the form attached hereto as Exhibit B.  The remainder of the Purchase Price shall be due and payable at Closing, and shall be delivered by Purchaser by federal wire transfer to Deupree's of immediately available funds on the Closing Date.

3.  **Condition of Property**.  Seller shall deliver the Property at Closing in materially the same condition as of the Effective Date, ordinary wear and tear and damage caused by Purchaser excepted.  The Improvements are being conveyed to Purchaser "AS IS."  The Transfer of the Property to Purchaser is subject to the representations and warranties of Seller as set forth in Section 10 below.

4.  **Inspection**.

   Within ten (10) days following the written request of Purchaser, Seller shall make available for inspection and copying at Purchaser's sole expense, all contracts, tax assessments and other documents relevant to the Property as Purchaser deems appropriate.

5.  **Title and Survey**.

   A.    Seller shall convey to Purchaser and Purchaser shall accept such title to the Property as a reputable nationally recognized title insurance company licensed by the State of Alabama shall be willing to insure (at standard rates without any special or additional premium) by special warranty deed commonly used in the jurisdiction in which the Land is located.  Title shall be subject to the use and occupancy restrictions of public record relating to the Property and other recorded instruments (the "**Permitted Exceptions**").

6.  **Closing**.  The Closing shall occur during normal business hours on or before October 24, 2007 (the "**Closing Date**").  Closing shall take place at such place as the parties

BALT1\4387271.8

EXHIBIT
A

shall mutually agree. Seller agrees to conduct Closing through a pre-closing, escrow or other arrangement reasonably requested by Purchaser to facilitate closing mechanics and to reduce or eliminate the need for Purchaser and its attorneys to be physically present at the Closing.

7. **Prorations, Apportionments and Adjustments at Closing.** Subject to any payment obligations of Purchaser under the Lease, the following shall be apportioned with respect to the Property as of 12:01 a.m., on the Closing Date, as if Purchaser were vested with title to the Property during the entire day upon which the Closing occurs:

(i) real estate and similar taxes ("**Property Taxes**") assessed against the Property; and

(ii) any other expenses and items of expense pertaining to the Property which are customarily prorated between a purchaser and a seller in the area in which the Property is located.

8. **Transaction Costs.** Seller shall be responsible for the cost of preparing the deed and for releasing all liens currently encumbering the Property and recording such releases. Purchaser shall pay the cost of conducting its due diligence studies, the costs of any title commitments and title policies and the cost of the survey, if any. Each party shall pay its own attorneys' and consultants' fees. The parties shall share equally payment of the cost of all documentary stamps, recordation taxes, transfer taxes and similar taxes required by law.

9. **Closing Documents and Deliveries.**

A. At the Closing, Seller shall deliver the following:

(i) The executed and acknowledged deed, in substantially the form attached as Exhibit C, which Purchaser shall cause to be recorded;

(ii) Any and all required transfer tax returns, duly executed by Seller, as transferor;

(iii) Any and all required affidavits as Purchaser's title insurance company may reasonably require;

(iv) The Subordination Agreement by and among Deupree's, Purchaser, Thompson's Gas & Electric Service, a Maryland corporation ("TGES"), and Bank of America, N.A. ("**Lender**"), in substantially the form attached hereto as Exhibit D (the "**Subordination Agreement**"), duly executed by an authorized officer of Deupree's; and

(v) A closing statement, duly executed by an authorized officer of Deupree's.

Case 12-40038-JJR    Doc 1    Filed 08/16/12    Entered 08/16/12 12:16:39    Desc Main
Document      Page 7 of 29

B.     At the Closing, Purchaser shall deliver the following:

(i)     The Purchase Price paid to Deupree's, in cash or immediately available funds;

(ii)    The Subordinated Promissory Note, in substantially the form attached hereto as Exhibit B, duly executed by an authorized officer of Purchaser;

(iii)   The Guaranty Agreement, in substantially the form attached hereto as Exhibit E, duly executed by an authorized officer of TGES;

(iv)    the Subordination Agreement, duly executed by an authorized officer of each of Purchaser, TGES and Lender;

(v)     Any and all required transfer tax returns, duly executed by Purchaser, as transferee; and

(vi)    A closing statement, duly executed by an authorized officer of Purchaser.

## 10.    Representations and Warranties.

A.     Seller, represents and warrants to Purchaser as of the Effective Date and through the Closing Date:

(i)     Seller has full power and authority and has obtained all necessary approvals or consents for the sale of the Property;

(ii)    Seller is the fee simple owner of the Property;

(iii)   No part of the Property is in violation of any governmental law, rule, or regulation or other governmental requirement;

(iv)    To Seller's knowledge, no Hazardous Materials (defined below) (other than amounts necessary for operation of the Property) exists at or is adjacent to the Property; the Property is not and has not been listed on the National Priorities List, CERCLIS (defined below) or any similar state list, the Property is not or has not been the subject of any "Superfund" evaluation or investigation, or any other investigation or proceeding of any Governmental Authority (defined below) or of Seller's evaluating, whether any remedial action is necessary to respond to any release of any Hazardous Materials on or in connection with the Property;

For purposes of this Agreement, the term "**Hazardous Materials**" shall mean any explosives, flammable substances, radioactive materials, asbestos in any form, paint containing lead, materials containing urea formaldehyde, polychlorinated biphenyls, oil, or petroleum products or byproducts, or any other hazardous, toxic, dangerous or otherwise regulated substances, wastes, pollutants, contaminants or materials, whether having such characteristics in fact or defined as such under federal, state, or local laws, or regulations and any amendments

- 3 -

thereto, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9061 et seq. ("CERCLIS"), the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1802 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq., the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the National Environmental Policy Act, 42 U.S.C. Section 4321, the Safe Drinking Water Act, 42 U.S.C. Sections 300F, et seq, and the Environmental Protection Agency and Occupational Safety and Health Administration regulations pertaining to asbestos.

(v)     To Seller's knowledge, there has been no release or threatened release of any Hazardous Material to any soil, groundwater, surface water, building component, wastewater, air or other media on or from the Property during Seller's ownership, occupation or use by Seller or any of its affiliates, or at or from any other location where Seller or any of its affiliates arranged for the storage, treatment, disposal or handling of any Hazardous Material;

(vi)     During the ownership, occupation or use by Seller or any of its affiliates, there have not been, and to Seller's knowledge prior to the ownership, occupation or use by Seller or any of its affiliates there were not, any underground storage tanks, above-ground storage tanks, underground piping, or Hazardous Materials used, stored, treated or disposed of at the Property; and

(vii)     No litigation or proceeding or, to Seller's knowledge, governmental investigation is pending, or to Seller's knowledge, threatened against or relating to the Property or Seller.

For the purposes of this Agreement, a **"Governmental Authority"** shall mean any federal, state, district, commonwealth, territorial or local government within the United States of America, its territories and possessions (or any national, state or local government outside of the United States of America) and any political subdivision or quasi-governmental authority of any of the same, including any court, tribunal, department, commission, board, bureau, agency, county, municipality, province, parish or other instrumentality of any of the foregoing in its collection, storage, use, treatment or disposal.

B.     Purchaser represents and warrants to Seller as of the Effective Date and as of the date of Closing that the execution, delivery and performance of this Agreement by Purchaser have been duly authorized by all necessary action on the part of Purchaser and do not require the consent of any third party and that the individual executing this Agreement on behalf of Purchaser has the authority to bind Purchaser to the terms of this Agreement.

11.     **Failure of Conditions; Default**. If Seller is in default hereunder for failure to comply with any one or more of the material terms or conditions of this Agreement and such failure continues for more than five (5) business days after Seller's receipt of written notice by Purchaser, Purchaser at its sole option may:  (a) terminate this Agreement by written notice delivered to Seller on or before the Closing and pursue all remedies available at law and for equity, (b) waive such defaults and proceed to Closing, or (c) enforce specific performance of this Agreement. If Purchaser defaults under this Agreement, and such default is not cured within five (5) days after written notice thereof from Seller, then Seller, as its sole option may:  (a)

- 4 -

terminate this Agreement by written notice delivered to Purchaser on or before the Closing and pursue all remedies available at law and for equity, (b) waive such defaults and proceed to Closing, or (c) enforce specific performance of this Agreement.

12. **Notices**. All notices and other communications hereunder shall be addressed to the parties as follows:

If to Seller:  Deupree's Gas, Inc.
      P.O. Box 828
      Sylacauga, Alabama 35150

If to Purchaser: Suburban Gas Propane Partners, LLC
      1850 Dual Highway, Suite 203
      Hagerstown, MD 21740

With required  DLA Piper US LLP
copies to:   6225 Smith Avenue
      Baltimore, Maryland 21209
      Attn: Mathew Gorra, Esq.

Any notice, demand or other communication (each, a "**notice**") that is given pursuant to this Agreement by either Seller or Purchaser to the other party(ies), shall be (i) given in writing, (ii) addressed to the other party(ies) at its required address(es) for notices delivered to it as set forth above, and (iii) delivered via either (x) hand delivery, (y) nationally recognized courier service (e.g., DHL, Federal Express, Express Mail) or (z) certified U.S. mail postage prepaid with return receipt requested. Any such notice shall be deemed given, and effective for purposes of this Agreement, as of the date actually delivered to the other party(ies) at such address(es) (whether or not the same is then received by other party(ies) due to a change of address of which no notice was given, or any rejection or refusal to accept delivery). Notices from either party(ies) (to the other(s)) may be given by its, his, or her attorneys. Each party may, from time to time, designate an additional or substitute required address(es) for notices delivered to it (provided, that such designation must be made by notice given in accordance with this Section 12).

13. **Parties Bound**. This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and permitted assigns.

14. **Governing Law; Arbitration**. (a) The laws of the State in which the Property is located shall govern the validity, construction, enforcement and interpretation of this Agreement.

(b)  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to and finally determined by arbitration in the State of Maryland before a sole arbitrator. The arbitrator shall be selected, and the arbitration shall be conducted, in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS. The arbitrator's decision shall be final and binding. Judgment on the award of the arbitrator may be entered in any court having jurisdiction. Any post-award proceedings shall be conducted in accordance with the Federal

BALTI\4387271.8

Arbitration Act, 9 U.S.C. Sec. 1, *et seq.* Unless Seller and Purchaser otherwise agree in writing, the costs of the arbitration, including the fees and expenses of the arbitrator, shall be shared equally by the parties. Each party shall bear its own costs and attorneys' fees related to the arbitration, provided that the losing party shall bear the costs of the arbitrator appointed under JAMS.

(c)   Notwithstanding the preceding binding arbitration provisions, Seller and Purchaser agree to preserve, without diminution, certain remedies enumerated below, which any party hereto may employ or exercise freely, independently or in connection with an arbitration proceeding or after an arbitration action is brought. The parties shall have the right to proceed in any court of proper jurisdiction or by self-help to obtain provisional or ancillary remedies, including preliminary injunctive or declaratory relief, sequestration, garnishment, attachment, appointment of receiver and filing an involuntary bankruptcy proceeding. Preservation of these remedies does not limit the power of an arbitrator to grant similar remedies that may be requested by a party in a dispute.

15.   **Brokers**. Seller and Purchaser represent and warrant that there have been no real estate brokers involved in this transaction (the "**Broker**"). If any broker should make a claim for a commission based upon the actions of Seller, Seller shall, jointly and severally, indemnify, defend and hold Purchaser harmless from such claim. If any broker should make a claim for a commission based upon the actions of Purchaser, Purchaser shall indemnify, defend and hold Seller harmless from such claim.

16.   **Multiple Counterparts**. This Agreement may be executed in a number of identical counterparts. If so executed, each of such counterparts shall, collectively, constitute one agreement, but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart. Neither this Agreement nor any memorandum thereof shall be recorded.

17.   **Time of the Essence**. The parties hereto expressly agree that time is of the essence with respect to this Agreement.

18.   **Entire Agreement**. This Agreement embodies the entire agreement of the parties with respect to the transaction herein contemplated, superseding all prior agreements and communications whether oral or written. Any amendments hereto shall be in writing and executed by the party against whom enforcement of the modification is sought.

19.   **Severability**. If any provision of this Agreement or the application thereof to any party or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to parties or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and be enforced to the fullest extent permitted by law.

20.   **Captions**. The captions of the various Sections in this Agreement are for convenience only and do not, and shall not be deemed to, define, limit or construe the contents of such Sections.

BALTI\4387271.8

Case 12-40038-JJR   Doc 1   Filed 08/16/12   Entered 08/16/12 12:16:39   Desc Main
Document      Page 11 of 29

21.     **Construction**.  The parties acknowledge that the parties and their attorneys have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

22.     **Terminology**.  As used in this Agreement, (i) the phrase **"and/or"** when applied to one or more matters or things shall be construed to apply to any one or more or all thereof as the circumstances warrant at the time in question, (ii) the terms **"herein" "hereof"** and **"hereunder"**, and words of similar import, shall be construed to refer to this Agreement as a whole, and not to any particular Section, unless expressly so stated, (iii) the term **"including"**, whenever used herein, shall mean **"including without limitation"**, except in those instances where it is expressly provided otherwise, (iv) the term **"person"** shall mean a natural person, a corporation, a limited liability company, and/or any other form of business or legal association or entity, and (v) the term **"business day"** shall mean any day other than a Saturday or Sunday or Federal holiday or legal holiday in the State in which the Property is located.

*[Signatures appear on following page]*

Case 12-40038-JJR    Doc 1    Filed 08/16/12    Entered 08/16/12 12:16:39    Desc Main
Document    Page 12 of 29

IN WITNESS WHEREOF, the parties hereto have, by their duly authorized representatives, executed this Agreement as of the Effective Date.

**"SELLER"**

DEUPREE'S GAS, INC.

By: _James J. Deupree_
Name: _Deupree's Gas, Inc._
Title: _Pres._
Date: _10/24/07_

**"PURCHASER"**

SUBURBAN GAS PROPANE PARTNERS, LLC

By: _(signature)_
Name: _J. Randall Thompson_
Title: _President_
Date: _10-24-07_

BALTI\4387271.8

- 8 -

## EXHIBIT A

## DESCRIPTION OF THE PROPERTY

Commence at a railroad spike in place being accepted as the Northeast corner of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama; thence proceed North 89° 47' 35" West along the North boundary of said section for a distance of 660.0 feet; thence proceed South 00° 12' 25" West for a distance of 528.0 feet to a 1" open top pipe in place; thence proceed South 88° 55' 25" West for a distance of 132.50 feet to a ⅛" rebar in place, said point being the point of beginning. From this beginning point proceed South 89° 58' 13" West for a distance of 499.21 feet (set ½" rebar) to a point on the flare-back of U. S. Highway 280; thence proceed South 21° 55' 50" East along said flare-back for a distance of 164.93 feet (set ½" rebar) to a point on the Northerly right-of-way of said U. S. Highway 280; thence proceed Southeasterly along the right-of-way of said highway and along a concave curve left having a radius of 4433.75 feet for a chord bearing and distance of South 46° 52' 37" East, 222.71 feet to a ½" rebar in place; thence proceed North 41°59' 57" East for a distance of 411.08 feet to the point of beginning.

The above described land is located in the Northeast one-fourth of the Northeast one-fourth of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama. Subject to easements and rights of way of record.

BALTIM4387271.8

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NO PAYMENTS OF ANY KIND, INCLUDING PRINCIPAL OF OR INTEREST ON THE INDEBTEDNESS SECURED BY THIS INSTRUMENT OR RECORD SHALL BE PAYABLE HEREUNDER EXCEPT TO THE EXTENT PERMITTED IN THE SUBORDINATION AGREEMENT DATED AS OF OCTOBER 24, 2007 BY AND AMONG BANK OF AMERICA, N.A., DEUPREE'S GAS, INC., SUBURBAN GAS PROPANE PARTNERS, LLC AND THOMPSON'S GAS & ELECTRIC SERVICE, INC., WHICH SUBORDINATION AGREEMENT IS INCORPORATED HEREIN BY SPECIFIC REFERENCE THERETO TO THE SAME EXTENT AS IF FULLY SET FORTH HEREIN.

## SUBORDINATED PROMISSORY NOTE

**$400,000.00**                                                October 24, 2007

      **FOR VALUE RECEIVED,** Suburban Gas Propane Partners, LLC (the "Company"), promises to pay to Deupree's Gas, Inc., an Alabama corporation (together with any subsequent holder as permitted herein, the "Seller"), the principal sum of Four Hundred Thousand and 00/100 Dollars ($400,000.00), together with interest until unpaid as set forth in this Subordinated Promissory Note (this "Note").

      1.      <u>Real Estate Purchase Agreement</u>.  This Note is issued pursuant to the terms and conditions of that certain Real Estate Purchase Agreement (the "Agreement") dated as of October 24, 2007, by and between the Company and the Seller.  Capitalized terms used and not otherwise defined herein shall have the meanings provided in the Agreement.

      2.      <u>Maturity</u>.  Unless sooner paid or cancelled in accordance with the terms hereof, the entire unpaid principal sum and all unpaid accrued interest, shall become fully due and payable on October 23, 2017 (the "Maturity Date").

      3.      <u>Interest</u>.  The Company shall pay interest on the outstanding principal sum of this Note at the rate of six percent (6%) per annum or, if less, at the highest rate of interest then permitted under applicable law.  In no event will this Note accrue interest at a rate that exceeds the highest rate of interest permissible under any law that a court of competent jurisdiction shall, in a final determination, deem applicable.

      4.      <u>Payments</u>.

      (a)      <u>Principal and Interest Payments</u>.  Beginning on November 24, 2007 and on the same day of each month thereafter, the Company shall make installment payments to the holder of this Note of principal and interest in the amount of Four Thousand Four Hundred Forty and Eighty-Two Cents ($4,440.82) each.  Unless sooner paid in full, the entire unpaid principal balance of this Note, together with all outstanding and unpaid accrued interest, shall be due and payable on the Maturity Date.

BALT2\4322040.11



(b)    Prepayment.  The Company shall have the right to prepay this Note in whole or in part and without penalty or premium at any time.

(c)    Manner of Payment.  Payments shall be made in U.S. Dollars in immediately available funds on the due dates of such payments, and shall be made to the address set forth herein for notices to the Seller.  Any payments by check shall be accepted subject to collection in immediately available funds.

5.    Subordination.  Pursuant to terms of that certain Subordination Agreement dated October 24, 2007 by and among the Company, the Seller, Thompson's Gas & Electric Service, Inc. (the "Guarantor") and Bank of America, N.A (the "Senior Lender"), this Note and the rights and obligations evidenced hereby are subordinate to the indebtedness of the Company and the Guarantor to the Senior Lender.

6.    Notice of Events of Default.  So long as any indebtedness under this Note remains outstanding, the Company shall provide to Seller, as soon as possible, written notice of each event which either (i) is an Event of Default hereunder, or (ii) with the giving of notice or lapse of time or both would constitute an Event of Default hereunder, in each case setting forth the details of such event and the action which is proposed to be taken by the Company with respect thereto.

7.    Events of Default.

(a)    The occurrence of any of the following events shall be an "Event of Default" under this Note:  (i) the failure of the Company to make any payment of principal or interest under this Note when due, which failure is not cured within thirty (30) days after the Seller gives the Company written notice thereof; or (ii) if the Company shall commence a voluntary case or other proceeding seeking liquidation, reorganization, or other relief with respect to the Company or the Company's debts under any bankruptcy, insolvency, or similar law now or hereafter in effect, or (iii) if an involuntary case or other proceeding shall be commenced against the Company seeking liquidation, reorganization or other relief with respect to the Company or the Company's debts under any bankruptcy, insolvency or similar law now or hereafter in effect, and such involuntary case or other proceeding shall remain undismissed and unstayed for a period of sixty (60) days, or an order for relief shall be entered against the Company under the federal bankruptcy laws as now or hereafter in effect.

(b)    Upon the occurrence of an Event of Default within the scope of clause (a)(i) of this Section 7, the unpaid principal with all accrued and unpaid interest evidenced by this Note shall, at the Seller's option, be accelerated and become then due and payable.

(c)    Upon the occurrence of an Event of Default within the scope of clauses (a)(ii) or (a)(iii) of this Section 7, the unpaid principal with all accrued and unpaid interest evidenced by this Note shall be accelerated and become immediately due and payable.

8.    Lost, Stolen, Destroyed or Mutilated Notes.  If this Note shall be mutilated, lost, stolen or destroyed, the Company shall issue a new Note of like date, tenor and denomination and deliver the same in exchange and substitution for and upon surrender and cancellation in the case

of mutilation, or if this Note is lost, stolen or destroyed, then, in lieu of surrender upon receipt, of an affidavit of Seller satisfactory to the Company of the loss, theft or destruction of this Note and Seller's agreement to indemnify the Company against presentation of this Note.

      9.    <u>Governing Law</u>.  This Note and the rights of the parties hereunder will be governed by and construed in all respects in accordance with the laws of the State of Maryland, without regard to the conflicts of laws rules of the State of Maryland.

      10.   <u>Amendment</u>.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and Seller.

      11.   <u>Notices</u>.  Any notice required or permitted by or in connection with this Note shall be in writing and shall be made by facsimile transmission, or by hand delivery, or by overnight delivery service, or by certified mail, return receipt requested, postage prepaid, addressed to the parties at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the parties to each other. Notice shall be considered given as of the earlier of the date of actual receipt, or the date of the facsimile transmission or hand delivery, or one (1) business day after delivery to an overnight delivery service, or three (3) business days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish that notice was given as provided herein.

| | |
|---|---|
| If to Seller : | Deupree's Gas, Inc.<br>P.O. Box 828<br>Sylacauga, AL 35150<br>Facsimile:   (256) 245-7473<br>Telephone:  (256) 245-8553 |
| With a copy to: | James L. Deupree, Jr.<br>2105 Magnolia Way<br>Birmingham, AL 35243<br>Telephone:  (205) 969-3208 |
| If to the Company: | Suburban Gas Propane Partners, LLC<br>1850 Dual Highway, Suite 203<br>Hagerstown, MD 21740<br>Attention:   J. Randall Thompson, President<br>Facsimile:   (301) 432-3890<br>Telephone:  (301) 432-6611 |
| With a copy to : | DLA Piper US LLP<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>Attention:   Matthew F. Gorra, Esq. |

BALT2\4322040.11

<table>
<tr><td>Facsimile:</td><td>(410) 580-3001</td></tr>
<tr><td>Telephone:</td><td>(410) 580-3000</td></tr>
</table>

12.  <u>Severability</u>. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of this Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

13.  <u>Captions</u>. Section headings and captions in this Note are for convenience only and shall not affect the construction or interpretation of this Note. Unless otherwise expressly stated in this Note, references in this Note to Sections shall be read as Sections of this Note.

14.  <u>Assignment</u>. This Note shall not be assigned by the Seller without the prior written consent of the Company (such consent not to be unreasonably withheld), except that no such written consent shall be required for Seller's assignment of this Note to (i) a parent, subsidiary or affiliate of Seller, (ii) any entity controlling, controlled by, or under common control of, Seller, (iii) any successor to Seller by merger, consolidation or reorganization or (iv) any stockholder of Seller, provided in each case that Seller gives the Company prior written notice thereof. Notwithstanding the foregoing, the Company shall be permitted to exercise its offset rights described in <u>Section 15</u> below, in whole or in part, against any and all holders of interests in this Note (in whatever proportions it chooses in its sole and absolute discretion), notwithstanding the circumstances enabling the Company to exercise such rights.

15.  <u>Right of Offset</u>. Pursuant to <u>Section 7.D(iii)</u> of the Asset Purchase Agreement by and among the Seller, the Seller's shareholders (the "<u>Shareholders</u>") and the Company dated August 10, 2007 (the "<u>Asset Purchase Agreement</u>"), <u>Section</u>   of the Agreement, any Transaction Documents (as defined in the Asset Purchase Agreement) and any documents delivered in connection with the Agreement (together with the Transaction Documents, the "<u>Ancillary Documents</u>"), the Company shall have a right to offset any payments due to be paid by the Company hereunder by any amounts then due and owing by the Seller or the Shareholders (or any of their permitted assigns under the terms and conditions of the Asset Purchase Agreement, the Agreement or the Ancillary Documents) to the Company or any of its affiliates under the terms and conditions of the Asset Purchase Agreement, the Agreement and the Ancillary Documents.

[ <em>signature appears on next page</em> ]

BALT2\4322040.11

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by its officer, thereunto duly authorized as of October 24, 2007.

**SUBURBAN        GAS        PROPANE PARTNERS, LLC**

By: _____
Name:    J. Randall Thompson
Title:    President

BALT2\4322040.11

# GUARANTY

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NO PAYMENTS OF ANY KIND, INCLUDING PRINCIPAL OF OR INTEREST ON THE INDEBTEDNESS SECURED BY THIS INSTRUMENT OR RECORD SHALL BE PAYABLE HEREUNDER EXCEPT TO THE EXTENT PERMITTED IN THE SUBORDINATION AGREEMENT DATED AS OF OCTOBER 24, 2007, BY AND AMONG BANK OF AMERICA, N.A., DEUPREE'S GAS, INC., SUBURBAN GAS PROPANE PARTNERS, LLC AND THOMPSON'S GAS & ELECTRIC SERVICE, INC., WHICH SUBORDINATION AGREEMENT IS INCORPORATED HEREIN BY SPECIFIC REFERENCE THERETO TO THE SAME EXTENT AS IF FULLY SET FORTH HEREIN.

THIS GUARANTY (this "Guaranty") is made this 24th day of October 2007, by Thompson's Gas & Electric Service, Inc., a Maryland corporation ("Guarantor"), to and for the benefit of Deupree's Gas, Inc., an Alabama corporation (the "Seller").

## RECITALS

WHEREAS, Suburban Gas Propane Partners, LLC, a Maryland limited liability company (together with its successors and assigns, "Purchaser") and Seller are parties to a Real Estate Purchase Agreement dated October 24, 2007 (the "Purchase Agreement"); and

WHEREAS, Guarantor is required to execute and deliver this Guaranty as a condition to the closing of the transactions contemplated in the Purchase Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor agrees as follows:

1.    **Guaranty.**  Guarantor hereby unconditionally and irrevocably guarantees to Seller the due and punctual payment of all of Purchaser's payment obligations to Seller (collectively, the "Obligations") under the $400,000 Subordinated Promissory Note dated as of October 24, 2007 given by Purchaser to Seller (the "Note").

Guarantor agrees that if Seller grants to Purchaser one or more extensions, renewals or modifications of any of the Obligations (whether or not as a result of the Subordination Agreement (as defined in Section 2 below)), or any part thereof, or permits or requires any other modification in the terms of the Obligations, or any part thereof, in any manner or on any terms that may be acceptable to Seller, with or without notice to Guarantor, this Guaranty shall, and is hereby made to extend to and cover such extended, renewed or modified Obligations, on whatever terms and conditions the same may be extended, renewed or modified, and without regard to the number of times the same may have been or shall be extended, renewed or modified.

Subject only to the conditions contained in the Subordination Agreement, Guarantor agrees (a) to pay any and all of the Obligations upon demand at any time after maturity thereof (whether by acceleration or otherwise); (b) to be bound by all of the terms and provisions

1

EXHIBIT

_C_

tabbies®

appearing on the face of this Guaranty; and (c) that Seller will not, after the default in the performance of any of the Obligations, be required first to resort to Purchaser, or to any security pledged, granted or otherwise assigned or conveyed to Seller, if any, before looking to Guarantor for payment under the provisions hereof. Notwithstanding anything in this Guaranty to the contrary, the rights and obligations of Guarantor shall be subject to the rights and obligations of Purchaser under the terms of the Note, the Purchase Agreement or any other document executed and delivered in connection with the same.

2. **Subordination.** Notwithstanding the foregoing and anything stated to the contrary in this Guaranty, Guarantor's guarantee of the Obligations are subject to, and modified by, the terms and conditions of the Subordination Agreement by and among Purchaser, Seller, Guarantor and Bank of America, N.A., dated October 24, 2007 (the "Subordination Agreement").

3. **Discharge of Guaranty.** Guarantor agrees its obligations hereunder are present and continuing guaranties of payment and not collectability and, except as set forth in the Subordination Agreement, shall not be discharged, impaired, modified or otherwise affected by (a) the unenforceability, non-existence, invalidity or non-perfection of (i) any of the Obligations, or (ii) any document or other instrument evidencing, securing, guaranteeing or executed in connection with any of the Obligations; (b) Seller's resort or failure or refusal to resort to any other security or remedy for the collection of any of the Obligations thereof; (c) the sale, exchange, release or surrender of any collateral or other security for any of the Obligations; (d) the insolvency or bankruptcy of Purchaser; (e) any modification, amendment, supplement or change in the status or terms of any of the Obligations or any collateral or other security for any of the Obligations; (f) any default by Purchaser in payment of any of the Obligations; (g) any compromise, settlement, release, discharge, termination, waiver or extension of time for payment (to the extent permitted by the Subordination Agreement), performance or observance of any obligation of Purchaser with respect to any of the Obligations; (h) the application of any payments, proceeds of collateral or other sums to any of the Obligations in such order and amounts as Seller may elect; (i) any exercise or non-exercise of any right, remedy, power or privilege of Seller with respect to any of the Obligations or any collateral or other security therefor; (j) any failure, omission, delay or lack of diligence on the part of Seller to enforce, assert or exercise any such right, power, privilege or remedy; or (k) any other event, circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof.

Guarantor agrees that this Guaranty shall not be construed as being terminated by payment in full of the Obligations until any applicable period for avoidance of any payments under the Subordination Agreement or applicable bankruptcy and insolvency laws shall have expired; and even after such termination, this Guaranty shall remain in full force and effect as to the Obligations then outstanding and any other Obligations at any time thereafter outstanding under any then-existing documents or agreements, together with any interest, costs of collection, and any other charges on any of the same. This Guaranty, and Guarantor's obligations hereunder, shall continue to be effective, or be automatically reinstated, as the case may be, if at any time payment in whole or in part of any of the Obligations by Guarantor or Purchaser is rescinded or must otherwise be restored or returned to such parties (or paid to the creditors of the same) upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of such parties, or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with

Case 12-40038-JJR    Doc 1    Filed 08/16/12    Entered 08/16/12 12:16:39    Desc Main
Document    Page 21 of 29

similar powers with respect to such parties or with respect to any part of the property thereof, or otherwise, all as though such payment had not been made.

4. **Amendment.** This Guaranty may be amended only by a writing duly executed by Guarantor and Seller. No waiver by Seller of any of the provisions of this Guaranty or any of the rights or remedies of Seller with respect hereto shall be considered effective or enforceable unless in writing, duly executed by Seller.

5. **Notices.** Any notice, request, demand, waiver or other communication required or permitted to be given under this Guaranty will be in writing and will be deemed to have been duly given only if delivered in person or by first class, prepaid, registered or certified mail, or sent by courier or, if receipt is confirmed, by facsimile:

If to Seller:

Deupree's Gas, Inc.
PO Box 828
Sylacauga, AL 35150
Attention: Charles A. Deupree
Telephone: (256) 245-7473
Fax: (256) 245-8553

With a copy to:

James L. Deupree, Jr.
2105 Magnolia Way
Birmingham, AL 35243
Telephone: (205) 969-3208

If to Guarantor:

Thompson's Gas & Electric Service, Inc.
1850 Dual Highway, Suite 203
Hagerstown, Maryland 21740
Attention: J. Randall Thompson
Facsimile: (301) 432-3890

With a copy to:

DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Attention: Matthew F. Gorra, Esq.
Facsimile: (410) 580-3001

6. **Waiver**. Neither any failure or any delay on the part of Seller in exercising any right, power or privilege under this Guaranty shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. No modification, amendment or waiver of any provision of this Guaranty shall be effective unless in writing and signed by a duly authorized officer of Seller, and then the same shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstances.

7. **Indemnification.** Subject to the terms and conditions of the Subordination Agreement, Guarantor agrees to indemnify and hold Seller harmless against any direct loss or direct expense, including reasonable attorneys' fees and disbursements, that may result from any failure of Purchaser or Guarantor to pay any of the Obligations when and as due and payable or that may be incurred by or on behalf of Seller in enforcing payment of any of the Obligations against Guarantor or Purchaser.

3

BALT2\4322020.8

8.  **Severability.** If any term or provision of this Guaranty is found to be invalid, illegal or unenforceable, all other terms and provisions of this Guaranty shall nevertheless remain in full force and effect.

9.  **Captions.** The Section and other captions of this Guaranty are for convenience only and do not constitute a part of this Guaranty.

10.  **Recitals.** The Recitals (and the terms defined in the Recitals) are part of this Guaranty.

11.  **Governing Law.**

(a)  This Guaranty and the rights of Guarantor and Seller under it will be governed by and construed in all respects in accordance with the laws of the State of Maryland, without regard to the conflicts of laws rules of the State of Maryland, except as may be superseded by federal laws.

(b)  Any dispute, claim or controversy arising out of or relating to this Guaranty or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to and finally determined by arbitration in the State of Maryland before a sole arbitrator. The arbitrator shall be selected, and the arbitration shall be conducted, in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS. The arbitrator's decision shall be final and binding. Judgment on the award of the arbitrator may be entered in any court having jurisdiction. Any post-award proceedings shall be conducted in accordance with the Federal Arbitration Act, 9 U.S.C. Sec. 1, *et seq.* Unless Guarantor and Seller otherwise agree in writing, the costs of the arbitration, including the fees and expenses of the arbitrator, shall be determined by the arbitrator. Unless otherwise determined by the arbitrator, each of Guarantor and Seller shall bear its own costs and attorneys' fees.

(c)  Notwithstanding the preceding binding arbitration provisions, certain remedies that Guarantor or Seller may employ or exercise freely, independently or in connection with an arbitration proceeding or after an arbitration action is brought are preserved. Each of Guarantor and Seller shall have the right to proceed in any court of proper jurisdiction or by self-help to exercise or prosecute the following remedies, as applicable: (i) obtaining provisional or ancillary remedies including injunctive relief, sequestration, garnishment, attachment, appointment of receiver and filing an involuntary bankruptcy proceeding; and (ii) in connection with any actual or threatened breach or default of this Guaranty which could give rise to irreparable harm. Preservation of these remedies does not limit the power of an arbitrator to grant similar remedies that may be requested by a party in a dispute.

12.  **Event of Default.** Guarantor's failure or inability to perform any or all of the obligations or agreements herein shall constitute an Event of Default under Guarantor's Senior Credit Facility with Bank of America, N.A. and a breach of this Guaranty.

*[Signature appears on the following page.]*

4

BALT2\4322020.8

IN WITNESS WHEREOF, and intending to be legally bound hereby, Guarantor executes this Guaranty as of the date first above written.

**WITNESS:**

THOMPSON'S GAS & ELECTRIC SERVICE, INC., a Maryland corporation

By: _____
J. Randall Thompson, President

BALT2\4322020.8

## EXHIBIT B

## SUBORDINATED PROMISSORY NOTE

## EXHIBIT C

## FORM OF DEED

## WARRANTY DEED

STATE OF ALABAMA      )

TALLADEGA COUNTY    )

     KNOW ALL MEN BY THESE PRESENTS, that in consideration of Six Hundred Thousand and no/100 DOLLARS ($600,000.00), to the undersigned Grantor in hand paid by the Grantee herein, the receipt whereof is acknowledged, Deupree's Gas, Inc., an Alabama corporation (herein referred to as Grantor), do grant, bargain, sell and convey unto Suburban Gas Propane Partners, LLC, a Maryland limited liability company, whose address is 1850 Dual Highway, Suite 203, Hagerstown, Maryland 21740 , (herein referred to as Grantee), the following described real estate situated in Talladega County, Alabama, and all appurtenances thereto, to-wit:

Commence at a railroad spike in place being accepted as the Northeast corner of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama; thence proceed North 89° 47' 35" West along the North boundary of said section for a distance of 660.0 feet; thence proceed South 00° 12' 25" West for a distance of 528.0 feet to a 1" open top pipe in place; thence proceed South 88° 55' 25" West for a distance of 132.50 feet to a ⅜" rebar in place, said point being the point of beginning. From this beginning point proceed South 89° 58' 13" West for a distance of 499.21 feet (set ½" rebar) to a point on the flare-back of U. S. Highway 280; thence proceed South 21° 55' 50" East along said flare-back for a distance of 164.93 feet (set ½" rebar) to a point on the Northerly right-of-way of said U. S. Highway 280; thence proceed Southeasterly along the right-of-way of said highway and along a concave curve left having a radius of 4433.75 feet for a chord bearing and distance of South 46° 52' 37" East, 222.71 feet to a ½" rebar in place; thence proceed North 41°59' 57" East for a distance of 411.08 feet to the point of beginning.

The above described land is located in the Northeast one-fourth of the Northeast one-fourth of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama.

Subject to easements and rights of way of record. All improvements are sold "AS IS". .

$600,000 of the above recited purchase price was paid by a mortgage loan closed simultaneously herewith.

TO HAVE AND TO HOLD, to the said Grantee, its successors or assigns forever.

Case 12-40038-JJR   Doc 1   Filed 08/16/12   Entered 08/16/12 12:16:39   Desc Main
Document   Page 26 of 29

And Grantor does for itself and for its successors or assigns covenant with the said Grantee, its successors or assigns, that it is lawfully seized in fee simple of said premises; that they are free from all encumbrances except as set forth herein and that it has a good right to sell and convey the same as aforesaid; that it will and its successors or assigns shall warrant and defend the same to the said Grantee, its successors or assigns forever against the lawful claims of all persons claiming by, through, or under Grantor.

IN WITNESS WHEREOF, the Deupree's Gas, Inc. has caused these presents to be executed in its name and on its behalf by James L. Deupree, Jr., its President, who is thereunto duly authorized, on this, the 24th day of October, 2007.

Deupree's Gas, Inc.

ATTEST:

_____
SECRETARY

BY_____
James L. Deupree, Jr., Its PRESIDENT

STATE OF ALABAMA )

TALLADEGA COUNTY )

I, the undersigned Notary Public, in and for said County and State, hereby certify that James L. Deupree, Jr., and Charles A. Deupree, whose names as President and Secretary, respectively, of Deupree's Gas, Inc., a corporation, are signed to the foregoing conveyance, and who are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they, as such officers and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this, the 24th day of October, 2007.

_____
NOTARY PUBLIC

## EXHIBIT D

## SUBORDINATION AGREEMENT

# EXHIBIT E

## GUARANTY AGREEMENT

Case 12-40038-JJR    Doc 1    Filed 08/16/12    Entered 08/16/12 12:16:39    Desc Main
Document        Page 29 of 29